*T. Turner*, for appellant.

*Reid & Reid, Hazelrigg & Winn,* for appellee.

---

## W. E. SURBER, *v.* HENRY P. FLOYD & FORD.

**Fraudulent Assignment by Father of Property to Infant Son.**

A father, by deed of gift to his minor son, transfers all his property in consideration of the son becoming "emancipated," or deprived of any parental help or assistance or expectancy at the death of the parent. The father was heavily involved, quite old and unable to support himself and family by manuel labor. Shortly after this deed was executed and delivered, judgment creditors of the father levied on and sold all the land conveyed in the deed to the son, and it was bought in by one of the creditors, but was redeemed by the son just prior to the expiration of the redemption period, and an order secured from the purchaser to have the deed of purchase at the execution sale, made to the son. It is shown that the son was only 18 years old, had no property of value, and it is not shown where he secured the funds to redeem the land, which required quite a sum of money. Other judgment creditors seek a resale of the same land: Held, that the deed of conveyance to the son was fraudulent and without consideration as to crditors and the land ordered sold to satisfy their claims.

APPEAL FROM PULASKI CIRCUIT COURT.

June 18, 1868.

OPINION OF THE COURT BY JUDGE PETERS:

An examintaion of the evidence in this case must satisfy the mind that there has been a carefully prepared plan, attempted to be carried out, desigend by the father and perhaps by both, to place appellant, a son of seventeen years of age, in a condition to assume the ownership of the real estate of his father, whereby the whole of it should be removed from the reach of creditors.

The execution of a paper by Thomas Surber, unusual, if not remarkable, in its character, cannot escape observation as the first *act* with which the plot opens. By which he attempts not only to surrender to his minor son such property as he might then claim, whether he was in fact entitled to any or not, and to secure to him all future acquisitions; but to deprive him as far as he could of the privileges and protection which the law throws around the inexperience of his non-age, and the improvidence and indiscretions of his youth. And although poor and without the means of supporting himself and family, and unable from disease to labor, this father surrenders to his son all claims on him for his services to aid him in his struggles with disease and poverty; and to complete the job, and notify the world of the sacrifice of himself, to advance his son, he registers the act with the recording officer.

For all this, there must be a motive, and as aids, in ascertaining the motives of those parties, dates become important.

The writing, which has just been commented on, was executed 26th of April, 1862, and acknowledged the same day.

On the 18th of June, 1862, a *venditioni exponas* issued from the office of the Pulaski circuit court, against Thomas Surber, the father of appellant, to the sheriff of said county, commanding him to sell his estate consisting of the lands in controversy, and one yoke of oxen, which he had previously levied an execution on; the lands were sold in obedience to the command of the writ, and John Owens purchased the 90 acres at $15; Thomas Durham the 17½ acres tract at $16, and said Owens the 74-acre tract at $184 30-100, which more than satisfied the debt in the *ven. ex.* named, and the surplus was credited on an execution in the

sheriff's hands against said Thomas Surber, in favor of J. Russell.

The tract of 90 acres was valued at $3 per acre, the tract of 17½ acres at $3, and the 74 acres at $7 per acre, as shown by the return of the sheriff.

The redemption money was paid just before the time expired, as is manifested by the record, to the purchasers by appellant, and they gave him an order to the sheriff to convey the lands to him. After that, Thomas Surber was insolvent, and appellees being judgment creditors have no hopes of making their debt unless these lands are subject thereto.

The next inquiry is, where did appellant get the means to redeem the lands with? He was only a little over 18 years of age; he had never received any estate by gift or devise or descent, or, if he had, the record fails to show it; his brother-in-law Stringer, who was intimate in the family, and knew all about their means and resources, was not aware that the young man had any money, or other property, except a horse, and a few hogs; the horse his father gave him, and where and how he got the hogs is not shown; he sold the horse for $90, and he sold one hog— the price is not told; nor does it appear what became of the other hogs.

This witness proves there were some debts in the way of uncollected taxes due Thomas Surber, the most of which, the witness himself collected, and paid over to said Surber about the time of these transactions, and it seems that he then had the money, a portion of which was paid out for a horse sold by the sheriff as the property of said Thomas, and which the witness bought in for him; that horse appellant afterwards claimed. As to the crops which he claimed to have raised on the land rented of Hudson, there is no proof that he sold any portion of them and realized any particular sum of money for them, and certainly no evidence that he got anything for them, before the money was paid to Owens and Durham to redeem the land.

The conclusion from reading all the evidence in the case is inevitable, that the money which was paid Owens and Durham for the land was furnished by Thomas Surber to his son for the purpose of placing the title in him, to be held for the benefit of the old man. And that the execution of the deed of *"emancipation,"* as it is called, to the son, was a prepartory step in the arrangement

to place the property of the father, who was greatly indebted, beyond the reach of his creditors.

Wherefore, the judgment is affirmed on the original appeal, and reversed on the cross appeal, with directions to sell the land in the pleadings described, or so much thereof as may be required to pay Floyd and Ford their debt, interest and costs, and for further proceedings consistent herewith.

*Morrow & Morrow, for appellant.*

*Van Winkle, Fox, for appellees.*